THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. HARRIS GREENBERG, PLAINTIFF IN ERROR.

Argued October 17, 1928—Decided February 4, 1929.

For the plaintiff in error, *Thomas J. Brogan.*

For the state, *William George (Aloysius McMahon,* deputy attorney-general and acting prosecutor of the pleas, on the brief).

The opinion of the court was delivered by

Parker, J. The indictment was for conspiracy and named three defendants, Greenberg, Gallagher and Bruyns. The last was acquitted by direction of the court. Gallagher made a confession which was used against him on his trial jointly with Greenberg, he was convicted and the Supreme Court affirmed that conviction, which is not now before us. Green-

berg was likewise convicted and brings this writ of error to an affirmance thereof in the Supreme Court. The case is before us on strict bill of exceptions and also on a certificate of the entire record of the trial pursuant to section 136 of the Criminal Procedure act. The points argued are: 1. Refusal to direct acquittal when the state rested. 2. Refusal to direct acquittal at the conclusion of the evidence. 3. Verdict against the weight of evidence; not noticed by the Supreme Court, though, as claimed, argued before that tribunal.

The crime charged was a conspiracy to steal, take and carry away large quantities of coal from the coal yard of Jagels Bellis & Company, in Hoboken, and several overt acts are charged.

Jagels Bellis & Company were wholesale coal dealers; Gallagher and Bruyns were employed by them. Greenberg was a retail coal dealer doing business on Long Island. The methods agreed on and to some extent carried out, as charged in the indictment, were for Greenberg to send his trucks over to the Jagels yard for coal, and for the co-conspirators to let him take away more coal than he was charged with on the books, by entering up short weight; and also to let him take coal of a better and more expensive grade than that charged against him.

Much of the state's case is founded on the testimony of the witness Brophy, who was employed by the Jagels firm ostensibly as a clerk and yard man, but really in a detective capacity; and his testimony is to some extent corroborated by other evidence. From this it appeared, among other things, that on one day Greenberg took out nineteen thousand pounds of coal which Brophy weighed correctly, and that Greenberg objected to Gallagher, who replied that he could not help it because Brophy had weighed the coal; and further, that earlier on that same day Brophy saw Gallagher weigh seventeen thousand five hundred pounds for Greenberg on the scales and write five hundred pounds less on the ticket; still further, that a load partly of stove and partly of pea coal was weighed and charged as pea coal. There was cir-

cumstantial evidence of one or more conferences between Bruyns, Gallagher and Greenberg, and telephone calls and the like. Then there is the testimony of Jagels himself to a conference with Greenberg, in which Jagels accused Greenberg of "coming into our organization and breaking it up" and Greenberg appeared greatly overcome; and after asserting that Jagels "could not prove anything" finally said: "Please don't have me arrested * * * I will make everything good."

The proof of overt acts was quite sufficient to go to the jury. Direct proof of the conspiracy itself was scanty, as it necessarily is unless one of the conspirators breaks down or some conference is overheard. But the rule seems to be well settled that the conspiracy may be inferred from overt acts done in pursuance of it, and often can be proved in no other way. 12 C. J. 636. And this seems to be common sense. If we see Greenberg taking away seventeen thousand five hundred pounds of coal with a ticket for seventeen thousand pounds made out by Gallagher; and taking out stove coal with a pea coal ticket made out by Gallagher, the inference of some understanding between them is obvious. We consider that there was plainly a case for the jury when the state rested and at the conclusion of the testimony; and as to weight of evidence, the force of the conflicting testimony was primarily for the jury, and this case falls very far short of meeting the tests laid down in *State* v. *Karpowitz*, 98 *N. J. L.* 546.

The judgment will be affirmed.

*For affirmance*—TRENCHARD, PARKER, KALISCH, KATZENBACH, CAMPBELL, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, JJ. 9.

*For reversal*—None.